# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| NATASHA DIXON | CIVIL ACTION NO. 24-0151 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| VOLUNTEERS OF AMERICA SOUTH CENTRAL LOUISIANA INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are two Motions to Dismiss: (1) Defendant Volunteers of America, Inc.'s ("VOA") Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6) (Record Document 28); and (2) Defendant Volunteers of America South Central Louisiana, Inc.'s ("VOASCL") Motion to Dismiss under Rule 12(b)(6) (Record Document 29). Plaintiff Natasha Dixon ("Dixon") has filed an opposition to both motions. See Record Document 33. Both Defendants have filed replies. See Record Documents 34 & 35. For the reasons stated below, VOA's motion (Record Document 28) is **GRANTED** for a lack of personal jurisdiction, and the 12(b)(6) portion of the Motion is **DENIED AS MOOT.** VOASCL's Motion (Record Document 29) is **GRANTED IN PART and DENIED IN PART**.

## FACTUAL BACKGROUND

The following facts are taken from Dixon's Complaint (Record Document 1) and are deemed true for the purposes of this ruling. This case arises from Dixon's employment with VOASCL, a Louisiana affiliate of the national VOA organization. See Record Document 1 ¶ 1. Dixon began working for VOASCL in November 2021 as a support coordinator in the Shreveport office. See id. at ¶¶ 5–6. As a Support Coordinator, Dixon

was responsible for coordinating care for clients deemed eligible for services through Louisiana's Medicaid programs. See id. at ¶ 6.

In March 2022, Dixon was promoted to the position of an assessor. See id. at ¶ 9. Assessors determine a client's eligibility for Medicaid services based on the client's responses to a series of questions. See id. at ¶ 6. If the client is deemed eligible for Medicaid services, then the assessor creates a care plan for the client. See id. The outcome of these assessments directly impacts VOASCL's ability to bill the government for reimbursement, as Defendants' Medicaid revenue depends on the number of clients deemed eligible for services. See id. at ¶¶ 7–8.

Shortly after Dixon began performing assessments, her supervisor, Program Administrator Shakendra Dorsey ("Dorsey"), began pressuring her and other assessors to falsify assessment data to ensure clients were always deemed eligible for services. See id. at ¶¶ 10–12. Dorsey allegedly pressured employees to find a way to make clients meet eligibility criteria and warned that "[i]f we don't have clients, we don't have jobs anymore." Id. at ¶ 10. According to Dixon, Dorsey instructed assessors to complete assessments without verifying accuracy of the information provided by the clients. See id. at ¶ 12. Additionally, Dixon alleges that after she assessed a client to be ineligible for Medicaid services, Defendants would change the assessment to make the client eligible. See id. at ¶ 16. Dixon asserts that she expressed concern that the conduct constituted Medicaid fraud.

Over the following months, Dixon repeatedly raised her objections to multiple levels of management. In January 2023, she met with Dorsey, Regional Director Gwen Hasling ("Hasling"), and Holli Trahan-Rowzee ("Trahan-Rowzee"), to object about being

instructed to falsify assessments. See id. at ¶¶ 18–19. Dixon allegedly warned that Defendants were "committing Medicaid fraud." Id. at ¶ 19. Over the next few days, Dixon was demoted back to a support coordinator position. See id. at ¶¶ 20–22.

Dixon continued to report the issue internally to Dorsey, Tasha Ross ("Ross") in Human Resources, Director of Human Resources Becky Amerson ("Amerson"), and COO Eboness Black ("Black"). See id. at ¶¶ 22–28. In emails and phone calls, Dixon described the directives to falsify information and explained her belief that the practices were defrauding Medicaid. See id. at ¶¶ 26–29. When Dixon called COO Black, she allegedly responded that if Dixon's reports were true, they would constitute Medicaid fraud. See id. at ¶ 29. However, after speaking with Dorsey and Hasling, Black concluded "everything was fine" and accused Dixon of not wanting to do her work. Id.

Dixon then contacted Eryn Dobson ("Dobson") and Ashlee Babin ("Babin") with the Louisiana Department of Health State Office of Aging and Services. See id. at ¶¶ 23, 31–33. According to Dixon, Babin encouraged her to continue reporting up the chain. See id. at ¶ 32.

On February 3, 2023, Dorsey arrived unannounced at Dixon's office, closed the door, and initiated a conference call with Hasling and Trahan-Rowzee. See id. at ¶ 34. During the call, Hasling allegedly told Dixon, "Natasha, you've been a lot of trouble lately. I'm tired of it, and you need to get out." Id. at ¶ 34. At the time of termination, Dixon had no disciplinary record and had been recognized as a top-performing employee. See id. at ¶ 37. Dixon contends that her termination was retaliatory and filed the present suit. See id. at ¶ 39.

## LAW AND ANALYSIS

I.     **Personal Jurisdiction under Rule 12(b)(2)**

    a. <u>Summary of the Arguments</u>

VOA moves to dismiss under Rule 12(b)(2), contending that this Court lacks both general and specific personal jurisdiction. <u>See</u> Record Document 28-1 at 6–11; <u>see also</u> Fed. R. Civ. Proc. 12(b)(2). VOA asserts that it is a Virginia-headquartered nonprofit corporation that only has relations to Louisiana through being VOASCL's parent company. <u>See id.</u> at 9. VOA argues that its national scope and charitable affiliations do not render it "essentially at home" in Louisiana for general jurisdiction. <u>See id.</u> As for specific jurisdiction, VOA maintains that Dixon has failed to establish that VOA has minimum contacts with the forum state. <u>See id.</u> at 10. Particularly, VOA argues that Dixon failed to allege any specific act by VOA directed at Louisiana that gave rise to this litigation. <u>See id.</u> at 10–11.

In opposition, Dixon argues that Louisiana has personal jurisdiction over VOA because it is not a passive parent company. <u>See</u> Record Document 33 at 11. Rather, VOA "maintains control, shares leadership, provides funds, and accomplishes its mission in coordination with regional affiliates like VOASCL …." <u>Id.</u> Dixon contends that VOA is subject to general jurisdiction pursuant to VOA's affiliation with the resident subsidiary company, VOASCL. <u>See id.</u> at 12. Dixon further argues that specific jurisdiction is proper because VOA has minimum contacts in Louisiana through VOASCL, and those contacts gave rise to her claims. <u>See id</u>. at 15.

In reply, VOA asserts that it is not subject to general jurisdiction in Louisiana through VOASCL because if so, it would be "at home" in every state. <u>See</u> Record

4

Document 34 at 1. VOA emphasizes that VOASCL operates independently from the national organization. See id. at 2.

    b. Applicable Law

A motion pursuant to Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." Luv N'Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citing Wyatt v. Laplan, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. See Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC, Civil Action No. 16-448-JWD-EWD, 2018 WL 3076743, at *4 (M.D. La. June 21, 2018). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) (quoting D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir. 1985)).

    c. Analysis

Under Fifth Circuit precedent, personal jurisdiction exists if (1) the state's long-arm statute extends to the defendant, and (2) the exercise of such jurisdiction is consistent with due process. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). The Louisiana long arm statute extends to the full extent allowed by due process.

See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction comports with due process when "(1) the defendant has purposefully availed himself of the benefits and protection of Louisiana by establishing 'minimum contacts' with Louisiana, and (2) the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." Raphiel v. Haley Residential Inc., 2023 WL 1806828, at *2 (W.D. La., 2023) (citing Allred v. Moore & Peterson, 117 F.3d 278, 285 (5th Cir. 1997)).

When determining whether a defendant has the requisite minimum contacts with the forum, a defendant may be subjected to general or specific jurisdiction. See Ford v. Mentor Worldwide, LLC, 2 F. Supp. 3d 898, 903 (E.D. La. 2014). General jurisdiction applies when the defendant's contacts with the forum are "continuous and systematic," even when the cause of action has no relation to those contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984). "The Fifth Circuit has characterized the 'continuous and systematic contacts' test as a 'difficult one to meet.'" Ford, 2 F. Supp. 3d at 903 (citing Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." Johnston, 523 F.3d at 609 (quoting Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002)). Typically, a corporation is subject to general jurisdiction in the place of incorporation and the place it is headquartered. See Daimler A.G. v. Bauman, 571 U.S. 117, 137, 139 (2014).

The Supreme Court's decision in Daimler makes clear that even where a subsidiary's contacts with a forum are sufficient to establish general jurisdiction over the

subsidiary, those contacts cannot automatically be attributed to the parent corporation. See id. at 135–36. Daimler expressly rejected the argument that a parent corporation is subject to general jurisdiction wherever its subsidiary is "at home," noting that such an approach "would sweep beyond even the 'sprawling view of general jurisdiction'" rejected in prior cases. Id. at 118 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 929 (U.S.N.C., 2011)). The Court emphasized that a corporate parent's and subsidiary's contacts are distinct and may be treated as the same only in the extraordinary circumstance where the two are alter egos. See id. at 134–35.

The Fifth Circuit likewise recognizes a strong presumption of corporate separateness. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999). For the presence and contacts of a subsidiary in the forum state to be attributable to its parent company for jurisdictional purposes, the court must determine whether the plaintiff has shown a "proof of control by the parent over the internal business operations and affairs of the subsidiary," and "the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship …." Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983). Additionally, "all the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist." Id.

Applying the jurisprudence above, Dixon has not demonstrated that VOA and VOASCL are alter egos. VOA is a Virginia-based national nonprofit organization headquartered in Virginia. See Record Document 1 at ¶ 5. VOASCL is separately incorporated in Louisiana. See id. at ¶ 4. While Dixon alleges that VOA provides national

oversight, funding mechanisms, and general governance structures, she does not allege that VOA directs VOASCL's daily operations, supervises its Louisiana employees, or manages the day-to-day Medicaid assessment workflow giving rise to the claims. See Record Document 33 at 12–14. Accepting Dixon's allegations as true, these kinds of affiliations fall short of the "exceptional case" required to disregard corporate formalities. See Daimler, 571 U.S. at 139 n.19. Thus, the Court concludes that general jurisdiction over VOA is lacking.

Specific jurisdiction applies when a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (quoting Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 215 (5th Cir. 2000)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas Turbines Inc. v. Donaldson Co., 9 F.3d 415, 419 (5th Cir. 1993) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 580 (1980)). The Fifth Circuit's three-step analysis for specific jurisdiction is as follows:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted). Applying this framework, the Court concludes that Dixon has not made a prima facie showing of specific jurisdiction over VOA.

For the first element of minimum contacts, the defendant's contacts must arise from its own affiliations with the forum, not the unilateral conduct of another party, such as an affiliate. See Walden v. Fiore, 571 U.S. 277, 286 (2014). The Complaint contains no factual allegations that VOA, the national entity, conducted activities in Louisiana, directed conduct toward Louisiana, or had any involvement in the events giving rise to Dixon's claims. See Record Document 1. Every allegation concerns the conduct of VOASCL employees, including the alleged falsification of assessments, interactions with Dixon, internal human resources complaints, and ultimately Dixon's termination. See Record Document 1 ¶¶ 10–38. Nothing in the Complaint alleges that VOA communicated with Dixon, supervised her employment, directed the Medicaid assessment process, made or approved any billing decisions, participated in the alleged retaliation, or had any involvement with VOASCL's Louisiana operations. See id.

Fifth Circuit precedent makes clear that a parent corporation does not establish minimum contacts by virtue of a subsidiary conducting business in the forum. See Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 346 (5th Cir. 2004). VOA's contacts cannot be established through the conduct of an independently incorporated Louisiana affiliate. See Daimler, 571 U.S. 117.

Because the Complaint contains no factual allegations establishing that VOA has minimum contacts in Louisiana, the first step of the specific jurisdiction analysis fails. Therefore, VOA's Motion to Dismiss under Rule 12(b)(2) is **GRANTED**, and VOA is **DISMISSED** from the litigation.

## II.     Failure to State a Claim under Rule 12(b)(6)

Because the Court has concluded that it lacks personal jurisdiction over VOA, all claims against VOA have been dismissed pursuant to Rule 12(b)(2). Accordingly, VOA's Rule 12(b)(6) Motion is **DENIED AS MOOT**. The Court therefore addresses the Rule 12(b)(6) arguments raised solely by VOASCL, and Dixon's responses to those arguments.

a. Pleading and Dismissal Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, and its progeny. See 550 U.S. 544 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not

have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678–79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

b. Analysis

In her Complaint, Dixon asserts claims under the False Claims Act ("FCA"), the Louisiana Medical Assistance Programs Integrity Law (LMAPIL), the Louisiana Whistleblower statute, and an intentional infliction of emotional distress ("IIED") claim under Louisiana tort law. See Record Document 1 at 11–13. VOASCL seek dismissal of Dixon's claims under Rule 12(b)(6). See Record Document 29-1. The Court will address each claim separately below.

1. False Claims Act: 31 U.S.C. § 3729(a)(1)(A)

VOASCL challenges Dixon's FCA claims under Rule 12(b)(6) and Rule 9(b), arguing that she fails to plead fraud with particularity. See id. at 3. An FCA claim has four elements: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." U.S. v. Harlingen Med. Ctr., 701 F. Supp. 3d 636, 646 (S.D. Tex. 2023) (quoting United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 324 (5th Cir. 2017)).

VOASCL contends that Dixon failed to "identify a single specific false claim for payment that VOASCL actually submitted to the government" and impermissibly relies on conclusory allegations. Record Document 29-1 at 8. Dixon responds that her allegations

11

satisfy Fifth Circuit precedent set out in U.S. ex rel. Grubbs v. Kanneganti, which states that a claim may survive "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" when details of "an actually submitted false claim" cannot be alleged. Record Document 33 at 16 (quoting 565 F.3d 180, 190 (5th Cir. 2009)). In reply, VOASCL relies on U.S. ex rel. Nunnally v. West Calcasieu Cameron Hospital to argue that Grubbs "does not absolve … the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits." Record Document 35 at 1 (quoting 519 F. App'x 890, 895 (5th Cir. 2013)).

Dixon has alleged in her Complaint that VOASCL supervisors instructed employees to falsify assessments to ensure Medicaid coverage; that employees and supervisors were knowingly submitting inaccurate assessments; and that VOASCL's reimbursement depended on these assessments. See Record Document 1 ¶¶ 7–12. Additionally, Dixon has identified several VOASCL employees involved in this scheme by name. See id. at ¶¶ 11–34. These allegations, taken as true, are sufficient to infer that false claims were submitted for Medicaid coverage. See Grubbs, 565 F.3d at 190. Accordingly, VOASCL's motion to dismiss the FCA § 3729(a)(1)(A) claim is **DENIED**.

2. False Claims Act – Conspiracy: 31 U.S.C. § 3729(a)(1)(C)

An FCA conspiracy claim requires at least two legally distinct actors who agree to defraud the government. See Harlingen, 701 F. Supp. 3d at 644. Because the Court has concluded that VOA must be dismissed from the suit for lack of jurisdiction, the Complaint no longer alleges a second conspirator capable of entering into an agreement with

VOASCL. See Record Document 1. Accordingly, Dixon's conspiracy claim under § 3729(a)(1)(C) is **DISMISSED**.

    3. <u>False Claims Act – Reverse False Claims: 31 U.S.C. § 3729(a)(1)(G)</u>

VOASCL argues that Dixon fails to state a reverse false claim because she has not alleged any "obligation" owed by VOASCL to the government or any attempt to avoid repayment. See Record Document 29-1 at 11. Dixon responds that the same conduct giving rise to the presentment theory also supports a reverse false claims theory because falsified assessments necessarily resulted in overpayments that VOASCL has an obligation to return via penalties. See Record Document 33 at 23.

Section 3729(a)(1)(G), the "reverse false claims" provision, imposes liability on a defendant who "knowingly makes … a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government …." § 3729(a)(1)(G). The focus of the section is not on fraudulent claims submitted to obtain payment from the government, but instead on situations where the defendant owes money to the government and takes steps to avoid paying that obligation.

> The four elements of a reverse false claim are:
>
> (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the United States suffered damages as a result.

<u>U.S. ex rel. Wuestenhoefer v. Jefferson</u>, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015). Here, the first element is not present. Although Dixon does allege that the defendant made

false statements to the government, those false statements were to increase payment from the government, not to decrease the defendants' obligation to the government.

Dixon cites United States v. Health Management Systems Inc., to support her position that a "reverse false claim" includes any time the "defendant makes a false statement to a third party …." 2022 WL 976161, at *4 (N.D. Tex. 2022). However, the same court in that same opinion also stated, "[c]ourts refer to claims brought under this paragraph of the statute as a reverse false claim because the defendant's actions 'result[] not in improper payment to the defendant from the Government, but rather no payment [(or reduced payment)] to the Government when payment is otherwise obligated.'" Id. (citing United States ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 329 (5th Cir. 2003)).

Dixon argues that the government's overpayments to VOASCL give rise to an obligation for VOASCL to repay those funds via penalties for violating § 3729(a)(1)(A). The Fifth Circuit has found that "unassessed regulatory penalties are not obligations under the FCA. For FCA liability to attach, there must be an 'established' duty 'to pay or transmit money or property to the Government.'" U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co., 843 F.3d 1033, 1039 (5th Cir. 2016). The penalties contemplated here are statutory penalties within a range of $5,000 to $10,000, plus three times the amount of damages sustained by the government. See § 3729(a)(1). Courts have emphasized that when the amount of the civil penalty is discretionary within a statutory range, any potential repayment obligation at the time of the alleged misconduct is merely contingent, not fixed. See Simoneaux, 843 F.3d at 1040–41 (citing U.S. v. Southland Gaming of the Virgin Islands, Inc., 182 F. Supp. 3d 297, 316 (D.V.I. 2016)). Because the

14

potential penalties are within a discretionary range, they cannot serve as the basis for a claim under § 3729(a)(1)(G).

Dixon's allegations go exclusively to a presentment theory under § 3729(a)(1)(A), not a reverse false claims theory. Therefore, VOASCL's Motion to Dismiss (Record Document 29) is **GRANTED** with respect to the claim under § 3729(a)(1)(G).

4. LMAPIL: La. Rev. Stat. §§ 46:439.1; 46:438.2; 46:438.3(A), (C)–(D)

VOASCL argues that Dixon's LMAPIL claim fails for the same reasons as her FCA claims: she does not identify any specific fraudulent claims submitted to the government and her allegations lack the particularity required by Rule 9(b). See Record Document 29-1 at 12–13. Plaintiff responds that LMAPIL mirrors the FCA and because she adequately plead her FCA claims, she has also satisfied the pleading standard for LMAPIL. See Record Document 33 at 24.

To state a claim under LMAPIL, a plaintiff must allege facts showing that the defendant submitted, or caused to be submitted, a false or fraudulent claim for payment to Medicaid. See La. R.S. § 46:438.3; see also Williams v. Hosp. Serv. Dist. of W. Feliciana Par., Louisiana, 250 F. Supp. 3d 90, 96 (M.D. La. 2017); see also Caldwell v. Janssen Pharm., Inc., 144 So. 3d 898, 909 (La. 2014). Here, Dixon alleges that VOASCL supervisors directed her to falsify Medicaid eligibility assessments so that participants would be deemed eligible, thereby allowing VOASCL to create care plans and bill the government for those fees. See Record Document 1 at 5. This allegation alone satisfies the pleading requirements by alleging that VOASCL submitted fraudulent claims. However, Dixon's allegations also satisfy the "caus[ing a false claim] to be presented"

15

path under § 46:438.3(A) as she alleges that the falsified assessments caused Medicaid claims to be submitted. See Record Document 1 at 4–7.

As both parties in the suit recognize, LMAPIL is very similar to the FCA and are analyzed and interpreted essentially the same way. Thus, for the same reasons the Court found that Dixon adequately plead her FCA claim under § 3729(a)(1)(A), Dixon has adequately plead a claim under LMAPIL. See La. R.S. § 46:438.3.

Although Dixon cites La. R.S. § 46:438.2 in her Complaint, that provision addresses illegal remuneration and is Louisiana's anti-kickback prohibition under LMAPIL. Section 438.2 makes it unlawful to "solicit, receive, offer, or pay any remuneration" in exchange for referring Medicaid recipients or ordering items or services reimbursable by Medicaid. The Complaint contains no allegations of kickbacks, referral fees, inducements, or remuneration. See Record Document 1. Dixon's allegations concern the falsification of Medicaid eligibility assessments and the creation of care plans, not the exchange of value for referrals or services. Because § 46:438.2 does not apply to the conduct alleged, Dixon's LMAPIL claim is **DISMISSED** to the extent it is based on 46:438.2. Accordingly, all claims under LMAPIL proceed, except the claim under § 46:438.2.

     5.  Louisiana Whistleblower Statute: La. Rev. Stat. § 23:967

VOASCL contends that Dixon fails to state a whistleblower claim because she has not alleged a violation of Louisiana law and cannot show that her termination was retaliatory. See Record Document 29-1 at 14. Dixon responds that she has met the pleading requirements under the Louisiana Whistleblower Statute because she has alleged that VOASCL violated LMAPIL. See Record Document 33 at 25–26.

The Louisiana Whistleblower Statute prohibits an employer from retaliating against an employee who in good faith, and after advising the employer of the violation of law:

> (1) discloses or threatens to disclose a workplace act or practice that is in violation of state law; (2) provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law; [or] (3) objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. § 23:967(A). To proceed on a whistleblower claim, the employee must allege (1) her employer violated the law through a workplace act or practice; (2) she informed her employer of the violation; (3) she refused to participate in the unlawful act or practice or threatened to disclose the unlawful act or practice; and (4) she was fired as a result of that refusal or threat to disclose. See Hale v. Touro Infirmary, 886 So. 2d 1210, 1216 (La. App. 4th Cir. 2004), writ denied, 896 So. 2d 1036 (La. 2005).

Because the Court has found that Dixon adequately plead a claim under LMAPIL, the first element is met. Additionally, Dixon alleges that she expressly informed her supervisors that the instructions to falsify Medicaid assessments constituted Medicaid fraud under Louisiana law; that she refused to comply; and that she was terminated for being "a lot of trouble lately." See Record Document 1 at 10. At the pleading stage, these allegations are sufficient to state a plausible claim under the Louisiana Whistleblower Statute. Therefore, VOASCL's Motion to Dismiss the Louisiana Whistleblower Claim is **DENIED**.

6. Intentional Infliction of Emotional Distress

VOASCL argues that the alleged conduct does not satisfy Louisiana's stringent extreme and outrageous standard for IIED. See Record Document 29-1 at 15 (citing White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991)). Plaintiff responds that the toxic environment and retaliatory firing constitute extreme and outrageous behavior. See

17

Record Document 33 at 27. According to the Louisiana Supreme Court in White, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." 585 So. 2d at 1209. Termination, workplace criticism, disagreements, or even alleged retaliatory conduct ordinarily do not meet this threshold.

Even accepting Plaintiff's allegations as true, the conduct described (directions to alter work product, internal disputes, and termination) does not rise to the level of "atrocious" or "utterly intolerable" conduct required under Louisiana law. See id. Accordingly, Dixon's IIED claim is **DISMISSED.**

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendant Volunteers of America, Inc.'s ("VOA") Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Record Document 28) is **GRANTED**. All claims against VOA are **DISMISSED**.

**IT IS FURTHER ORDERED** that VOA's Motion to Dismiss under Rule 12(b)(6) (Record Document 28) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Volunteers of America South Central Louisiana, Inc.'s ("VOASCL") Motion to Dismiss under Rule 12(b)(6) (Record Document 29) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that VOASCL's Motion is **GRANTED** with respect to Dixon's FCA claims under 31 U.S.C. § 3729(a)(1)(C) (Conspiracy) and § 3729(a)(1)(G) (Reverse False Claims), the LMAPIL claim under 46:438.2, and the IIED claim.

**IT IS FURTHER ORDERED** that VOASCL's Motion is **DENIED** with respect to Dixon's FCA claim under § 3729(a)(1)(A), the LMAPIL claim under 46:438.3, and the Louisiana Whistleblower claim under La. R.S. § 23:967.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of November, 2025.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE